UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

WASHINGTON STATE ALLIANCE
FOR RETIRED AMERICANS,

    Plaintiff,

    v.

STEVE HOBBS, in his official capacity as
Washington State Secretary of State,
MARY HALL, in her official capacity as
Thurston County Auditor, and JULIE
WISE, in her official capacity as King
County Elections Director,

    Defendants.

**AMENDED COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

Case No. 3:23-cv-06014

      Plaintiff Washington State Alliance for Retired Americans, by and through its undersigned counsel, files this Complaint for Declaratory and Injunctive Relief against Defendants Steve Hobbs, in his official capacity as Washington State Secretary of State, Mary Hall, in her official capacity as Thurston County Auditor, and Julie Wise, in her official capacity as King County Elections Director (collectively, "Defendants"). In support of its Complaint, Plaintiff alleges as follows:

## NATURE OF THE CASE

    1.    The Voting Rights Act ("VRA") prohibits states from preventing otherwise eligible voters from voting for president and vice president based on how

long they have resided in the state before election day. And the United States Constitution prohibits such requirements in *all* elections.

2.      Section 202 of the VRA is explicit: "No citizen of the United States who is otherwise qualified to vote in any election for President and Vice President shall be denied the right to vote . . . in such election *because of the failure of such citizen to comply with any durational residency requirement of such State or political subdivision*." 52 U.S.C. § 10502(c) (emphasis added).

3.      Likewise—regarding *all* elections—the United States Supreme Court has held that "[d]urational residence requirements" that "completely bar from voting all residents not meeting the fixed durational standards" deprive voters of the fundamental right to vote and "impinge[] on the exercise of a second fundamental personal right, the right to travel." *Dunn v. Blumstein*, 405 U.S. 330, 336, 338 (1972).

4.      To be sure, both the VRA and the U.S. Constitution allow states to impose short, pre-election *registration* requirements, and to limit registration and voting to bona fide residents. Specifically, the VRA authorizes registration deadlines up to 30 days before a presidential election, 52 U.S.C. § 10502(d), and the U.S. Constitution allows pre-election registration deadlines where "necessary to permit preparation of accurate voter lists," *Marston v. Lewis*, 410 U.S. 679, 680–81 (1973).

5.      But a *registration* requirement is different from a pre-election *durational residency* requirement, which the VRA absolutely prohibits in

presidential elections, 52 U.S.C. § 10502(c), and which impinges on fundamental rights to vote and travel, with no adequate justification, in all elections, *Dunn*, 405 U.S. at 343–60. Both the VRA and the U.S. Constitution protect voters from being denied the fundamental right to vote simply because they moved to a new address shortly before election day, if they otherwise comply with the state's registration deadlines and other requirements.

6.    Washington law violates these federal protections by imposing a pre-election durational residency requirement that is longer than the registration deadline, and that therefore prevents voters who could otherwise lawfully register and cast ballots from doing so just because they moved into the state, county, or precinct too recently.

7.    Specifically, as an eligibility requirement for voting, Washington requires that voters "have lived in the state, county, and precinct thirty days immediately preceding the election at which they offer to vote." Wash. Const. art. VI, § 1 (the "Durational Residency Requirement").

8.    Washington's Durational Residency Requirement denies otherwise eligible Washington voters their right to participate in elections in their new domicile and have a voice in selecting the elected officials who will represent them going forward.

9.      Washington law also requires voters to attest under penalty of perjury that they have resided at their current address for at least 30 days before the date of the election. *See* RCW 29A.08.230 (requiring voters to attest to meeting the state's durational residency requirement on their voter registration form); WAC 434-230-015 (requiring voters to re-attest to meeting the state's durational residency requirements on the ballot). And Washington law includes no exception for presidential or other federal elections.

10.      These laws facially violate both the VRA and the U.S. Constitution.

11.      To ensure that Washington voters, including the members and constituents of the Plaintiff organization, will not be denied their right to vote in violation of the VRA and the U.S. Constitution, Plaintiff seeks an order from this Court declaring the Durational Residency Requirement unlawful and enjoining its enforcement because it violates: (1) Section 202 of the Voting Rights Act, and (2) the First and Fourteenth Amendments of the U.S. Constitution.

## JURISDICTION AND VENUE

12.      Plaintiff brings this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by federal law and the U.S. Constitution.

13.     This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States.

14.     This Court has personal jurisdiction over Defendants, who are sued in their official capacities only.

15.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because (1) all Defendants are residents of Washington, in which this judicial district is located, and (2) a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

16.     This Court has the authority to enter a declaratory judgment and provide permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201–2202.

## PARTIES

17.     Plaintiff the Washington State Alliance for Retired Americans (the "Alliance") is a 501(c)(4) nonprofit social welfare organization incorporated in Washington, with its headquarters in Thurston County. It is a chartered state affiliate of the Alliance for Retired Americans, a nationwide grassroots organization with more than 4.3 million members. The mission of the Alliance and its nationwide affiliate is to ensure social and economic justice and full civil rights for retirees, with particular emphasis on safeguarding their right to vote. The Alliance has

approximately 94,000 members across Washington, including thousands of members in this judicial district, including in King and Thurston Counties, and new members are constantly joining its ranks. As a result, it is imperative for the Alliance that its members who move to Washington and intend to make the State their new domicile are entitled to vote in the elections that matter to them and will affect them as residents. It is also imperative that Alliance members who move within Washington to a new county or precinct are permitted to vote in the elections that affect them in their new home.

18.    The Durational Residency Requirement harms new members of the Alliance who move to Washington or to a new county or precinct within the month leading up to any federal election. New members join the Alliance's ranks each month, including in the month before each federal election, as retirees frequently move to Washington for a variety of reasons, including to be close to family. Existing Alliance members also regularly move within the State. Because of the Durational Residency Requirement, such members—who would otherwise vote in Washington and in their current county and precinct—will be unable to do so.

19.    Defendant Steve Hobbs is the Secretary of State of Washington ("Secretary Hobbs") and is sued in his official capacity. Secretary Hobbs is "the chief election officer for all federal, state, county, city, town, and district elections." RCW 29A.04.230. In this role, Secretary Hobbs is responsible for administrating

presidential primary, state primary, and state general elections and training and certifying state and local elections personnel. RCW 43.07.310. He is responsible for producing the voter registration applications and furnishing them to the county auditors and county election officials. RCW 29A.08.260(1). Secretary Hobbs is further responsible for promulgating rules relating to elections, including rules governing "voter registration applications and records," "[t]he use of voter registration information in the conduct of elections," and "the format of all voter registration applications." RCW 29A.04.611(15), (16); RCW 29A.08.220(1). Secretary Hobbs, individually and through the conduct of his employees, officers, agents, and servants, acts under the color of State law at all times relevant to this action.

20.    Defendant Mary Hall is the Auditor in Thurston County (a noncharter county), which comprises the state capital Olympia and Plaintiff's headquarters. Defendant Julie Wise is the Elections Director for King County (a charter county), which is the most populous county in Washington and which comprises Seattle. Ms. Hall and Ms. Wise (together, the "County Defendants") are sued in their official capacities as "County Auditors" as defined in RCW 29A.04.025 ("'County auditor' means the county auditor in a noncharter county or the officer, irrespective of title, having the overall responsibility to maintain voter registration and to conduct state and local elections in a charter county."). The County Defendants are "ex officio the

supervisor of all primaries and elections, general or special." RCW 29A.04.216; *see also id.* 29A.60.010 ("All elections, whether special or general . . . must be conducted by the county auditor as ex officio county supervisor of elections . . . ."). As "the chief registrar of voters for every precinct within [their] county," they "maintain a list of all registered voters within the county." RCW 29A.08.105(2); RCW 29A.08.125(12); *see also* King County Charter a 350.20.50 (King County Department of Elections administered by the Director of Elections, and is responsible for, among other things, "registration of voters in the county"). The County Defendants are responsible for distributing voter registration forms, sending acknowledgement notices to new registrants, and notifying registrants if their applications are incomplete. RCW 29A.08.260 (distribution of voter registration forms); RCW 29A.08.110(2) (acknowledgment notices), (3) (notices of incomplete applications). They also send ballots to voters, including the security envelope containing the declaration that voters must sign, swearing under penalty of perjury that they meet the qualifications for voting under state law. RCW 29A.40.091; WAC 434-230-015. Individually and through the conduct of their employees, officers, agents, and servants, the County Defendants act under the color of State law at all times relevant to this action.

## STATEMENT OF FACTS AND LAW

**I.    Washington state law requires voters to reside at their address for at least 30 days before the election in which they seek to vote.**

21.    Washington imposes a clear durational residency requirement on voters who seek to vote in the State.

22.    Washington's state constitution sets forth the qualifications that a voter must meet to be entitled to vote in the state's elections. Specifically, a voter "shall be entitled to vote at all elections" if that voter is at least 18 years old, a citizen of the United States, and not disqualified from voting due to a conviction of an infamous crime or judicial declaration of mental incompetency. Wash. Const. art. VI, § 1. (incorporating Wash. Const. art. VI, § 3). In addition, the state constitution imposes a durational residency requirement, stating that a voter must "have lived in the state, county, and precinct thirty days immediately preceding the election at which they offer to vote." *Id*.

23.    Washington applies this Durational Residency Requirement to all registrants uniformly with no exceptions.

24.    To register to vote and cast a ballot, voters must attest to meeting the Durational Residency Requirement on their registration forms and on the security envelopes in which they must return their ballots.

25.    Washington's voter registration form requires registrants to sign an oath affirming, under penalty of perjury, that they "will have lived at this address in

Washington for at least thirty days immediately before the next election at which I vote . . . ." RCW § 29A.08.230; *see also* RCW § 29A.08.210 (specifying that a voter registration form must contain the oath in RCW § 29A.08.230); RCW § 29A.08.210 (requiring voter registration forms to include the following warning: "If you knowingly provide false information on this voter registration form or knowingly make a false declaration about your qualifications for voter registration you will have committed a class C felony that is punishable by imprisonment for up to five years, a fine of up to ten thousand dollars, or both").

26.    Registrants must also provide a residential address on their application that "identif[ies] the actual physical residence of the voter in Washington . . . with detail sufficient to allow the voter to be assigned to the proper precinct and to locate the voter *to confirm his or her residence for purposes of verifying qualification to vote under Article VI, section 1 of the state Constitution*," in other words, to confirm compliance with the state's 30-day Durational Residency Requirement as to state, county, and precinct. RCW § 29A.08.010 (emphasis added).

27.    At the time of voting, voters must again confirm that they satisfy Washington's Durational Residency Requirement by affirming under penalty of perjury on the ballot return envelope that they are "[a] Washington state resident that meets the requirements for voting mandated by state law." WAC 434-230-015; *see also* RCW 29A.40.091(2).

28.     Voters who move to a new county within Washington must submit a change of address form, which requires that they attest that they have lived at their current address for the 30 days preceding the election in which they intend to vote. RCW 29A.08.420; WASH. SEC'Y OF STATE, Voter Registration Form, available at https://www.sos.wa.gov/sites/default/files/2023-07/VRF_English.pdf?uid=654514 422de0f (accessed Nov. 3, 2023).

29.     State law does not allow any voter to forgo these attestations at any stage of the registration or voting process, for any election.

## II.     The Durational Residency Requirement prohibits otherwise-eligible Washington voters who have recently moved from participating in elections affecting them in their new home.

30.     The Durational Residency Requirement prevents otherwise qualified voters from registering and voting in the races that will affect them going forward.

31.     Qualified voters can register to vote up to and through election day. RCW § 29A.08.140(1). Voter registration applications submitted online or via mail are timely so long as they are received at least 8 days before the election. *Id.* And voters can register in person at a county auditor's office, voting center, student engagement hub, or other location designated by the county auditor, up to and including election day. *Id.*

32.     In order to register to vote, voters must attest on their voter registration form that, under penalty of perjury, they have, among other requirements, resided at

their current address for at least 30 days before the date of the election in which they intend to vote. *See supra* ¶ 25.

33.     Voters must also attest on their ballot return envelopes that they meet all of the requirements for voting under state law. *See supra* ¶ 27.

34.     However, if a registrant moves to the state within 30 days of election day without "a present intention to return to such other state or to acquire a domicile at some other place outside of Washington," RCW 28B.15.013(1), the registrant cannot satisfy the state's Durational Residency Requirement, and thus they cannot truthfully make the required attestations to register to vote. *See supra* ¶ 25.

35.     Similarly, if a voter moves to a new county within the state, they would not be able to make the required attestation on the change of address form that would allow them to vote in elections that will affect them in their new home. *See supra* ¶ 28.

36.     Thus, even though Washington affords some new voter registrants an opportunity to register to vote during the 30 days before an election, including on the day of the election, new Washington residents who move into the state within 30 days of election day, and current Washington residents who move to a new county or precinct within 30 days of election day, are not qualified to vote, able to register to vote, or able to vote at their current address under state law.

**III.    Under the VRA, states may not deny otherwise qualified voters the right to vote in presidential elections based on the duration they have resided in that state.**

37.    Section 202 of the Voting Rights Act Amendments of 1970 "completely abolish[es] the durational residency requirement as a precondition to voting for President and Vice President" and states that otherwise qualified voters may not "be denied the right to vote for electors for President and Vice President, or for President and Vice President, in such election because of the failure of such citizen to comply with any durational residency requirement of such State or political subdivision." 52 U.S.C. § 10502(b), (c).

38.    Section 202 also prohibits states from requiring voters to attest to their residency status as a precondition for registering to vote or voting, because doing so would deny a U.S. citizen "who is otherwise qualified to vote" in Washington "the right to vote for electors for President and Vice President, or for President and Vice President . . . because of the failure of such citizen to comply with any durational residency requirement of such State or political subdivision." 52 U.S.C. § 10502(c).

39.    The Durational Residency Requirement does exactly what Section 202 of the VRA prohibits by imposing a durational residency requirement and requiring voters to swear and attest to their residency status as preconditions to voting for president and vice president.

40.    Unlike some other states, Washington law does not provide any exception to the state's Durational Residency Requirements for voters who intend to vote only in a presidential election. *See, e.g.*, N.Y. Elec. Law § 5-102(2) ("The provisions herein with respect to a durational residency requirement for purposes of qualifying to vote shall not prohibit United States citizens otherwise qualified, from voting for president and vice president of the United States."); Nev. Rev. Stat. § 298.259(1) ("If a new resident of the State of Nevada otherwise qualified to vote in another state in any election for President and Vice President of the United States has commenced his or her residence in this State after the 30th day next preceding that election and for this reason does not satisfy the requirements for registration in this State, the new resident may vote for President and Vice President in this State.").

41.    While the VRA allows an imposition of a 30-day pre-election registration cutoff, even in presidential elections, 52 U.S.C. § 10502(d), and allows voters who do "not satisfy the *registration requirements* of" a new state of residence to vote for president and vice president in their prior state of residence, if they are able to do so in person or via absentee ballot, *id.* § 10502(e) (emphasis added), those provisions do not apply to the Durational Residency Requirement, because Washington does not impose any *registration* cutoff. Rather, under the Durational Residency Requirement, voters who could otherwise *register and vote* within 30 days of a presidential election are prohibited from doing so solely because they have

not lived in the state long enough before the election. That is precisely what Section 202 of the VRA prohibits.

**IV.   The U.S. Constitution also prohibits states from denying the right to vote to otherwise qualified voters who do not satisfy the Durational Residency Requirement.**

42.    Durational residency requirements such as Washington's "completely bar from voting all residents not meeting the fixed durational standards." *Dunn*, 405 U.S. at 336.

43.    The Durational Residency Requirement "den[ies] . . . the right to vote" to citizens who move to Washington or to a new county or precinct within 30 days of an election, "deprive[s] them of 'a fundamental political right, . . . preservative of all rights,'" and "directly impinge[s] on" the right to travel. *Id.* at 336, 338 (quoting *Reynolds v. Sims*, 377 U.S. 533, 562 (1964)).

44.    To be sure, states may establish criteria for what makes a voter a bona fide *state resident* for voting. *See id.* at 349–51; *see also* RCW 28B.15.013(1) (considering residents to be domiciled in Washington if they are "physically present in Washington" and "without a present intention to return to such other state or to acquire a domicile at some other place outside of Washington").

45.    But unlike this straightforward, forward-looking residency definition that turns on where a voter intends to make their home in the future, the backward-looking Durational Residency Requirement "penalize[s] those persons who have

traveled from one place to another" by "divid[ing] residents into two classes, old residents and new residents, and discriminat[ing] against the latter to the extent of totally denying them the opportunity to vote." *Dunn*, 405 U.S. at 334-35.

46.    States may also constitutionally impose pre-election *registration* cutoffs where "necessary to permit preparation of accurate voter lists." *Marston*, 410 U.S. at 681. If a state's durational residency requirement coincides with an otherwise constitutional registration deadline, a voter would not be independently injured by the residency requirement because they would also be unable to register before the state's predetermined deadline. *See id.* at 680 (declining to strike down retrospective durational residency requirement where it was tied to "closing of the State's [voter] registration process").

47.    But unlike in *Marston*, Washington voters are injured by the state's Durational Residency Requirement. While there is a statutory mechanism through which Washington voters can register to vote or change their address up to and on election day, that mechanism affords no relief to new residents of Washington or to those voters who move within the state to a new county or precinct within 30 days of an election. Under the Durational Residency Requirement, both categories of otherwise eligible voters are deprived the right to vote in the races that will affect them in their new domiciles going forward.

48.     There is no legitimate state interest furthered by Washington's Durational Residency Requirement, let alone a compelling and substantial one, so the law cannot withstand constitutional scrutiny. *Dunn*, 405 U.S. at 341, 358-60.

## CLAIM FOR RELIEF

### COUNT I
### Voting Rights Act Section 202
### 52 U.S.C. § 10502; 42 U.S.C. § 1983; 28 U.S.C. §§ 2201, 2202

49.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 48 as though fully set forth herein.

50.     During the 1970 amendment of the Voting Rights Act, Congress identified several findings about "the imposition and application of the durational residency requirement as a precondition to voting for the offices of President and Vice President, and the lack of sufficient opportunities for absentee registration and absentee balloting in presidential elections." 52 U.S.C. § 10502(a).

51.     In particular, Congress found that such requirements deny or abridge voters' inherent constitutional right to vote for their preferred presidential and vice-presidential candidates, their right to free movement, and equality of civil rights, and due process and equal protection of the laws guaranteed under the Fourteenth Amendment. Congress also found that such requirements do not "bear a reasonable relationship to any compelling State interest in the conduct of presidential elections." 52 U.S.C. § 10502(a)(6).

52.     Codifying these findings, Section 202(b) of the Voting Rights Act Amendments of 1970 provides:

> Congress declares that in order to secure and protect the above-stated rights of citizens under the Constitution, to enable citizens to better obtain the enjoyment of such rights, and to enforce the guarantees of the fourteenth amendment, it is necessary (1) to completely abolish the durational residency requirement as a precondition to voting for President and Vice President . . . .

52 U.S.C. § 10502(b).

53.     Section 202(c) of the Voting Rights Act Amendments of 1970 further provides, in relevant part:

> No citizen of the United States who is otherwise qualified to vote in any election for President and Vice President shall be denied the right to vote for electors for President and Vice President, or for President and Vice President, in such election because of the failure of such citizen to comply with any durational residency requirement of such State or political subdivision . . . .

52 U.S.C. § 10502(c).

54.     The Durational Residency Requirement violates Section 202 of the Voting Rights Act by conditioning a voter's eligibility to vote on whether that voter has lived at their current Washington address for a certain period of time before election day. *See* Wash. Const. art. VI, § 1.

55.     The Durational Residency Requirement denies U.S. citizens "who [are] otherwise qualified to vote" in Washington "the right to vote for electors for President and Vice President, or for President and Vice President" solely because

they do not "comply with any durational residency requirement of such State or political subdivision." 52 U.S.C. § 10502(c).

56.    For these reasons, Washington's Durational Residency Requirement, and any related attestations related to a voter's residency status, must be enjoined from enforcement.

## COUNT II
### First and Fourteenth Amendments
### U.S. Const. Amend. I and XIV; 42 U.S.C. § 1983, 28 U.S.C. §§ 2201, 2202

57.    Plaintiff realleges and incorporates by reference paragraphs 1 through 56 as though fully set forth herein.

58.    The Supreme Court has invalidated laws like the Durational Residency Requirement on the grounds that such laws unduly burden the right to vote and "penalize those persons who have traveled from one place to another to establish a new residence during the qualifying period." *Dunn*, 405 U.S. at 334.

59.    Laws like Washington's Durational Residency Requirement "divide residents into two classes, old residents and new residents, and discriminate against the latter to the extent of totally denying them the opportunity to vote." *Id.* at 334–35.

60.    "By denying some citizens the right to vote," Washington's Durational Residency Requirement "deprive[s] them of 'a fundamental political right, . . . preservative of all rights.'" *Id.* at 336 (quoting *Reynolds*, 377 U.S. at 562).

61.    Because it implicates a fundamental right, the Durational Residency Requirement is constitutional "only upon a clear showing that the burden imposed is necessary to protect a compelling and substantial governmental interest." *Id.* at 340–41 (internal quotations omitted).

62.    The Durational Residency Requirement is not necessary to protect a compelling and substantial governmental interest. *See id.* at 343–44, 351, n.22 (distinguishing interests served by voter registration deadline, and a forward-looking residency requirement, from interests served by backward-looking durational residency requirement).

63.    For these reasons, and in accordance with the Supreme Court's holding in *Dunn v. Blumstein*, Washington state law violates the First and Fourteenth Amendments of the United States Constitution.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment:

a)    Declaring that the Durational Residency Requirement violates Section 202 of the Voting Rights Act and the First and Fourteenth Amendments to the U.S. Constitution;

b)    Permanently enjoining Defendants and their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from enforcing the Durational Residency Requirement by including the Durational Residency Requirement on the voter registration form or by denying any voter the ability to vote in any election on the basis of their failure to have resided in the state, county,

or precinct of Washington for a minimum of 30 days before the date of the election;

c)   Awarding Plaintiff its costs, disbursements, and reasonable attorneys' fees incurred in bringing this action pursuant to 42 U.S.C. § 1988 and other applicable laws; and

d)   Granting such other and further relief as the Court deems just and proper.

Dated: November 8, 2023.                    Respectfully submitted,

_/s/ Ben Stafford_____
Ben Stafford, WSBA No. 39849

_/s/ Abha Khanna_____
Abha Khanna, WSBA No. 42612

ELIAS LAW GROUP LLP
1700 Seventh Ave., Suite 2100
Seattle, WA 98101
Telephone: (206) 656-0176
bstafford@elias.law
akhanna@elias.law

_/s/ Alexi M. Velez_____
Alexi M. Velez*

_/s/ Marilyn Gabriela Robb_____
Marilyn Gabriela Robb*

_/s/ Tina Meng Morrison_
Tina Meng Morrison*

ELIAS LAW GROUP LLP
250 Massachusetts Ave, N.W., Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
avelez@elias.law

mrobb@elias.law
tmengmorrison@elias.law

*Admitted Pro Hac Vice*

*Counsel for Plaintiff*