1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WASHINGTON STATE ALLIANCE FOR
RETIRED AMERICANS,

                    Plaintiff,

        v.

STEVE HOBBS, in his official capacity as
Washington State Secretary of State; MARY
HALL, in her official capacity as Thurston
County Auditor; JULIE WISE, in her official
capacity as King County Elections Director,

                    Defendants.

JIM WALSH and MATT BEATON,

                    Proposed Intervenors-
                    Defendants.

Case No. 3:23-cv-06014-TMC

ORDER DENYING MOTION TO
INTERVENE

## I.  INTRODUCTION

In November 2023, Plaintiff filed this lawsuit challenging the State of Washington's

requirement that all residents registering to vote attest that they will have lived at their

registration address for at least 30 days before the next election. Dkt. 1. Plaintiff argued that after

Washington enacted same-day voter registration in 2019, the 30-day residency requirement

became unlawful, and violated the federal Voting Rights Act and the First and Fourteenth

Amendments. *See id.*

On March 15, 2024, this Court granted the parties' joint motion to enter a consent judgment and decree that enjoined Defendants from enforcing the durational residency requirement. Dkt. 35, 36. Since that time, Defendant Steve Hobbs, the Washington Secretary of State, has complied with the consent decree by promptly informing all county auditors (including proposed-intervenor Matt Beaton) on March 19, 2024, of its requirements and going through a public rulemaking process to amend Washington's voter registration form that became effective on August 25, 2024. *See* Dkt. 50. The new voter registration form removes the durational residency requirement but still requires Washington voters to attest that they are residents of the State of Washington. *See* Dkt. 50-5 at 6.

On September 16, 2024, Franklin County Auditor Matt Beaton and Washington State Republican Party chairman Jim Walsh moved to intervene as defendants in the case. Dkt. 38. The Court set an accelerated briefing schedule and heard oral argument on the day the motion to intervene became ripe. *See* Dkt. 41, 42, 52.

Beaton and Walsh argue primarily that they should be allowed to intervene based on their allegations that the underlying litigation was collusive and that Defendants failed to advance potentially meritorious arguments challenging Plaintiff's Article III standing. *See* Dkt. 38, 51. The proposed intervenors have not supported their motion or allegations with any sworn declarations or other evidence. Plaintiff, and Defendant Steve Hobbs, have both opposed the motion, arguing that it is untimely and does not meet the standard for intervention under Federal Rule of Civil Procedure 24(a) and relevant Ninth Circuit precedent. Dkt. 47, 48. Defendant Hobbs supported his opposition with evidence establishing both when proposed intervenors knew or had reason to know of the consent decree and the steps the Secretary of State's office has already taken to comply with the consent decree's terms in advance of the November 2024

election. *See* Dkt. 50.

Timeliness is a "threshold requirement for intervention." *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990). Because Beaton and Walsh have not met their burden to show that they timely moved to intervene, their motion is DENIED.

## II.   BACKGROUND

Before the consent decree and closure of this case (Dkt. 37), Washington law required residents registering to vote to attest that they have lived at their current in-state address "for at least thirty days immediately before the next election." RCW 29A.08.230. Washington also allows for same-day voter registration. RCW 29A.08.140(b).

Plaintiffs in this case, the Washington State Alliance for Retired Americans, filed their complaint on November 7, 2023, claiming that this thirty-day residency requirement harmed its members—because retirees "frequently move to Washington for a variety of reasons, including to be close to family" and also "regularly move within the State" and are unable to vote because of the requirements of RCW 29A.08.230. *See* Dkt. 1 at 6. The Alliance asserted that this requirement "prohibits otherwise-eligible Washington voters who have recently moved from participating in elections affecting them in their new home." *Id*. at 11.

The Alliance publicized its lawsuit and the case was covered by legal news publications concerned with voting issues within a day of filing. *See, e.g.*, Rachel Riley, *Washington Can't Block New Residents from Voting, Retirees Say*, Law360, https://www.law360.com/articles/1764615/wash-can-t-block-new-residents-from-voting-retirees-say (Nov. 8, 2023); Democracy Docket, *Washington Durational Residency Requirement Challenge*, https://www.democracy docket.com/cases/washington-durational-residency-requirement-challenge/.

The Alliance amended its complaint on November 20 (Dkt. 16), and Defendants filed answers on December 8 and 12, 2023 (Dkt. 23, 24), and January 4, 2024 (Dkt. 28).

ORDER DENYING MOTION TO INTERVENE - 3

Subsequently, on March 6, the parties notified the Court that they had resolved their dispute. Dkt. 34. On March 8, the parties moved for the Court to enter their negotiated consent judgment and decree. Dkt. 35. The Court granted the motion and entered the consent judgment and decree on March 15, 2024. Dkt. 36, 37.

The consent decree concluded that Washington state's durational residency requirement under RCW 29A.08.230 violated Section 202(c) of the Voting Rights Act, and the First and Fourteenth Amendments. Dkt. 37 at 5–6; *see* 52 U.S.C. § 10502(c). The consent decree also provided that, so long as its effective date was no later than August 1, 2024, the Washington Secretary of State's Office would "as soon as practicable" before the November 2024 elections: (1) revise voter registration forms and informational materials to exclude mention of any durational residency requirement, (2) "direct county officials regarding the requirements to make changes to the oaths and registration forms as stated in" the consent judgment and decree, (3) advise the Washington Department of Licensing to update websites and publicly-accessible materials to reflect these changes, and (4) stop distributing materials indicating to voters that they must reside at their Washington address for at least thirty days before elections. Dkt. 37 at 5–7.

On March 19, 2024, in compliance with the injunctive requirements of the consent decree, the Washington Secretary of State's Director of Elections, Stuart Holmes, forwarded the consent decree and summary of required election changes to all Washington county auditors and election managers. *See* Dkt. 50 ¶ 4; Dkt. 50-1. Proposed Intervenor Matt Beaton, the Franklin County Auditor, was one of the recipients of Holmes' email. Dkt. 50-1 at 2. Holmes' email directed the auditors' offices "to remove any mention of the 30-day durational residency requirement" from their websites and printed materials. *Id*. The email also summarized the consent judgment and decree, informing recipients that "Voters cannot be denied the right to

register or right to vote in any election on the basis that the registrant or voter has not resided at their current address to vote for at least thirty days before election day." *Id.*

On May 21, 2024, the Washington Secretary of State filed a notice of proposed rulemaking to amend the voter registration form to comply with the consent decree and the notice was published in the Washington State Register. *See* Wash. State Reg. § 24-11-136 (May 21, 2024); Dkt. 50-2. The notice provided the name of this case and case number as one of the reasons for the proposal. *Id.* On May 28, this notice was circulated to a list of parties that "have requested to be notified of all Washington Administrative Code filings related to election administration." *See* Dkt. 50 ¶ 6; Dkt. 50-3 at 2. The notice was also emailed to all county auditors in the state, including Beaton, on the same day. *See* Dkt. 48 at 5; Dkt. 50-4 at 2. On June 25, a public hearing was held at the Washington State Library to address the proposed rule. *See* Dkt. 50 ¶ 7. Afterwards, on July 25, the rule was adopted as final, and it became effective on August 25. Wash. State. Reg. § 24-16-019; Dkt. 50 ¶ 8; Dkt. 50-5 at 2.

Throughout July, multiple Washington news publications reported on the consent decree and changes to voting requirements. *See, e.g.*, TJ Martinell, *Ferguson, Hobbs agree to settlement voiding original Washington Constitution voter rule*, The Center Square, https://queenannenews. com/news/2024/jul/10/ferguson-hobbs-agree-to-settlement-voiding-original-washington-constitution-voter-rule/ (Jul. 10, 2024); Eric Tegethoff, *30-day residency requirement of WA voter registration struck down*, MyEdmondsNews, https://myedmondsnews.com/2024/07/30-day-residency-requirement-for-wa-voter-registration-struck-down/ (Jul. 16, 2024).

Beaton and Walsh filed their motion to intervene on September 16. Dkt. 38. At proposed intervenors' request, the Court set an accelerated briefing schedule and heard oral argument on the day the motion became ripe. *See* Dkt. 41, 43, 52. Plaintiff Washington State Alliance for Retired Americans and Defendant Steve Hobbs opposed the intervention, Dkt. 47–48, and the

proposed intervenors replied. Dkt. 51.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 24(a) provides for intervention as a matter of right if, on a "timely motion," the party moving to intervene "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." The Ninth Circuit articulates four requirements for intervention as of right: (1) timeliness, (2) an interest relating to the subject of the case, (3) that disposition of the case may impair the movant-intervenor's ability to protect that interest, and (4) the movant's interest is not adequately represented by the existing parties. *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996), *as amended on denial of reh'g* (May 30, 1996). The party seeking to intervene bears the burden of showing that all requirements are satisfied. *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). And of the four requirements, timeliness "is the threshold requirement for intervention as of right." *League of Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (citing *United States v. Oregon*, 913 F.2d at 588 (cleaned up)). If a motion to intervene is not timely, the Court "need not reach any of the remaining elements." *Id*. (citing *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996)).

### IV.    DISCUSSION

"A party must intervene when he knows or has reason to know that his interests might be adversely affected by the outcome of the litigation." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835–36 (9th Cir. 2022) (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 923 (9th Cir. 2004)). In deciding whether a motion to intervene is timely, the Court considers three factors: (1) the stage of the proceedings at which a movant seeks to intervene, (2) the prejudice to the parties, and (3) the reason for and length of the delay. *Id*. (citing *Orange Cnty. v. Air Cal.*,

799 F.2d 535, 537 (9th Cir. 1986)). Intervention at a late stage in proceedings, such as where

parties have already "come to an agreement" even where the resolution is not yet "officially

approved by the district court" "weighs heavily against" intervention. *Cal. Dep't of Toxic

Substances Control v. Com. Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002) (citing

*Orange Cnty.*, 799 F.2d at 538). Moreover, late-stage intervention has been determined to be

prejudicial as it "unnecessarily prolong[s] the litigation" and "threaten[s] the parties' settlement."

*Id*. Post-judgment intervention specifically is "disfavored because it creates 'delay and prejudice

to existing parties.'" *Calvert v. Huckins*, 109 F.3d 636, 638 (9th Cir. 1997) (quoting *United

States v. Yonkers Bd. Of Educ.*, 801 F.2d 593, 596 (2d Cir. 1986)); *see also Alaniz v. Tillie Lewis

Foods*, 572 F.2d 657, 659 (9th Cir. 1978) ("Since the motion was filed after the consent decree

was approved, the first factor weighs heavily against appellants . . . to countermand it now would

create havoc and postpone the needed relief.") (internal citation omitted).

      Waiting "until after entry of a consent decree weighs heavily against intervention."

*Oregon*, 913 F.2d at 588. And movants must "convincingly explain" their reason for delay—the

Ninth Circuit denied intervention in *Orange County* where the proposed intervenors claimed they

"did not know" their "interests were not being adequately represented by the original parties"

even though "local newspapers reported the ongoing negotiations between the parties." *See

Orange Cnty.*, 799 F.2d at 538. The Ninth Circuit held that the movants in *Orange County*

should have "joined the negotiations before the suit was settled" to "protect their interests,"

"realized that the litigation might be resolved by negotiated settlement," and "surely . . . known

the risks of waiting." *Id*. The Ninth Circuit held the district court did not abuse its discretion in

denying the intervention as untimely. *Id*.; *see also Oregon*, 913 F.2d at 589 (finding intervention

untimely when movants had notice of the proceedings and were aware of the interests affected).

      In this case, Beaton and Walsh waited to intervene until six months after the consent

decree had been entered, five months after the time for appeal had passed, and after Defendant Hobbs had acted to implement the relief provided by the consent decree in advance of the November 2024 election. *See* Dkt. 37, 50. Even putting aside the publicity surrounding the lawsuit's filing in November 2023, and the public nature of the Court's docket, there is no dispute that Defendant Hobbs' office provided notice of the consent decree and its consequences to all county auditors on March 19, 2024, including Beaton and all other auditors affiliated with the state Republican party. Dkt. 50 ¶ 4, Dkt. 50-1. Counsel for the proposed intervenors conceded at oral argument that, even if his client did not read the email, this notice provided "reason to know" that his clients' interests "might be adversely affected by the outcome of the litigation." *W. Watersheds Project*, 22 F.4th at 835–36. Had proposed intervenors sought to intervene then to raise their standing arguments on appeal, their motion might have been timely. *See id.* at 836 ("The general rule is that a post-judgment motion to intervene for purposes of appeal is timely if filed within the time allowed for the filing of an appeal" (cleaned up)).

Instead, proposed intervenors waited for nearly six more months, while in the meantime Defendants acted to implement the consent decree. For the first factor in evaluating timeliness of an intervention, the Ninth Circuit already considers proceedings to be in their late stages when parties are coming "to an agreement" even if their resolution is not yet "officially approved by the district court." *Com. Realty Projects, Inc.*, 309 F.3d at 1119 Intervention at this stage, where the Court has entered a consent decree and Defendants have implemented its requirements, is therefore particularly late and the circumstances "weigh[] heavily against" intervention. *Alaniz*, 572 F.2d at 659.

As to the second factor, for the Court to allow intervention now, several months after its entry of the consent decree and weeks before a general election, would lead to the exact kind of prejudice to the parties that disfavors late-stage interventions. *See, e.g.*, *Calvert*, 109 F.3d at 638

1   (Post-judgment intervention is "disfavored because it creates delay and prejudice to existing

2   parties" (cleaned up)); *Alaniz*, 572 F.2d at 659 (To "countermand [the consent decree] now

3   would create havoc and postpone the needed relief."). The terms of the consent decree included

4   specific timing provisions to ensure that its relief could be implemented in an orderly way well in

5   advance of the November 2024 election. *See* Dkt. 37 at 6. Defendant Hobbs has complied with

6   those terms—through public rule-making—and the voter registration forms and materials in use

7   for the upcoming election reflect the consent decree's requirements. *See* Dkt. 50-1–50-5.

8   Allowing intervention now would prejudice Defendants by casting doubt on the procedures they

9   have already expended significant resources implementing. And although at oral argument

10  counsel for the proposed intervenors disclaimed any intent to try and alter those procedures for

11  this election, allowing intervention at this late stage also creates a risk of confusion for voters

12  seeking to register. *See Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (per curiam) ("Court orders

13  affecting elections, especially conflicting orders, can themselves result in voter confusion and

14  consequent incentive to remain away from the polls. As an election draws closer, that risk will

15  increase.").

16          As to the third factor for timeliness, Beaton and Walsh's motion does not "convincingly

17  explain" the reason for or length of their delay. *Orange Cnty.*, 799 F.2d at 538. Beaton and

18  Walsh only claim, without any supporting evidence, that neither "had any reason to know that

19  their rights and obligations were at stake." Dkt. 38 at 6. The Ninth Circuit has held that this is not

20  an adequate excuse. *Orange Cnty.*, 799 F.2d at 538 (quoting *Alaniz,* 572 F.2d at 659) (holding

21  that proposed intervenors could not simply claim they "did not know" their "interests were not

22  being adequately represented by the original parties," particularly where "local newspapers

23  reported the ongoing negotiations."). Here, as in *Orange County*, there was publicly available

24  press coverage of the lawsuit and resulting consent decree, and the Washington Secretary of

State's office took numerous steps to inform county officials of the consent decree and its requirements—including by sending a copy of the decree and a summary of its requirements directly to Beaton within the time for taking a direct appeal. Neither Beaton nor Walsh supports their motion with any sworn testimony or other evidence to the contrary, and they have not explained why they waited nearly six months after that point to intervene.

Although it is their burden to show that they have met all requirements to intervene, Beaton and Walsh do not address any factors other than timeliness in their motion. *See generally* Dkt. 38. But timeliness is dispositive. Timeliness "is the threshold requirement for intervention as of right," and if a motion to intervene is not timely, the Court "need not reach any of the remaining elements." *League of Latin Am. Citizens*, 131 F.3d at 1302. Accordingly, the Court denies Beaton and Walsh's motion and declines to examine any other issues.

## V.   CONCLUSION

Because the proposed intervenors Beaton and Walsh's motion is untimely, and timeliness is a threshold issue under Fed. R. Civ. P. 24(a) setting the requirements for intervention as of right, the Court DENIES the motion to intervene (Dkt. 38).

Dated this 11th day of October, 2024.

Tiffany M. Cartwright
United States District Judge

ORDER DENYING MOTION TO INTERVENE - 10